The next case on the call of the docket is Agenda No. 2, Case No. 131-300, People v. Collins. Mr. Snyder, are you ready to proceed? I am. Please proceed. Good morning. I'm Andrew Snyder, counsel. I'm Assistant Attorney General Josh Snyder on behalf of the people of the state of Illinois. The parties agree that had defendant not asked for two trials, one on the offense of unlawful possession of a firearm by a felon, and one on all of the other accounts relating to his possession of a firearm, then his acquittal on the one offense would bar his subsequent prosecution on all the other offenses. In that case, it would have been a very straightforward application of the doctrine of issue preclusion, which is incorporated in both our Double Jeopardy Clause and the federal Double Jeopardy Clause. But defendant did ask for two trials. And so instead, this case presents a straightforward application of the doctrine of waiver or invited error. When a defendant asks to be tried twice, he can't then complain that he gets the two trials he asked for. He can't complain under the Double Jeopardy Clauses that incorporate the doctrine of issue preclusion as a component. And he can't complain by unincorporating that doctrine of issue preclusion and then complaining under that doctrine separately. Can't the same argument be made for the state in its failure to object to the motion to sever? No, Your Honor. Everyone was under, I think, the common understanding at the time when the defendant moved to sever that the motion to sever would allow them to be tried on both offenses, notwithstanding that both trials would necessarily involve litigation of the shared element. Prior to 2023, when he moved to sever, that was the law under the federal Constitution, as held in Currie v. Virginia in 2018. That was also recognized under Illinois law dating back to at least 2012, when people who pooled the appellate court recognized that when counsel is making a strategic decision about how to address the problem of potentially prejudicial evidence that's relevant to one count but not relevant to other counts, how do we address that? When you're weighing the pros and cons, one of the options is to move to sever, and one of the cons of that option is that it will allow the state to then have the second trial if there's an insufficiency at the first trial, to get a chance to remedy that insufficiency at the second trial. This is one of the reasons counsel may decide, rather than moving to sever, in this case, I think, you know, maybe we've got witnesses, we don't want to risk inconsistencies between their testimony, that they could be impeached at the second trial with their testimony from the first trial, so instead we'll ask for limited instruction, or instead we'll offer to stipulate to the fact of the felony. Those are all various options, but one of the options is to move to sever, and at the time in 2023 it was the law that when you move to sever, when you ask for two trials that will necessarily involve litigation of an element in both, you are agreeing to be tried on that element in both of the trials that you asked for. I would like to start with the double jeopardy clause question, because the question of whether the usual rules of waiver and invited error apply differently really is most likely to result in a different answer when we're looking at a constitutional right. I'm glad you want to start there, counsel. I do as well. So with respect to double jeopardy, we know generally the principle is we don't want to bring to bear on an individual the power and the resources of the state multiple times, and so is that the issue here? Do we have those circumstances? And if we don't, what impact would utilizing double jeopardy in this instance have? Sure. So we don't have that problem, and that's why this could potentially have been a tricky question, but the U.S. Supreme Court again in 2018 held in Currier v. Virginia that when a defendant moves for a sentence, as the court put it, when the defendant consents to two trials or invites a second trial, the issue preclusion component of the double jeopardy clause simply does not apply to that second trial regardless of what the outcome of the first trial was. And the reason is exactly because when a defendant asks to be tried twice, that second trial doesn't represent any of the sorts of evils the double jeopardy clause is concerned about. It doesn't reflect oppressive prosecution, repeated involuntarily being subjected to the stress and anxiety and ordeal of being tried more than once, because the defendant has asked to be tried more than once. The only reason there is a second trial is because the defendant literally moved the court to try him twice. And so that is what the double jeopardy clause. Your argument presumes that issue preclusion and double jeopardy are coextensive, and if I understand the Currier decision, there was no majority opinion on the issue preclusion issue. That's true. There isn't any majority on the issue preclusion issue. Which would necessarily suggest that they're not coextensive. No, Your Honor. Our position doesn't actually require that the court pass on whether the contours of issue preclusion are exactly the same under common law or under the double jeopardy clause, but because of the majority in Part 2 of Currier held was that there is no issue preclusion problem with the second trial. There was a disagreement as to what that issue preclusion doctrine might look like, but the majority held that there is no issue preclusion problem with the second trial. I thought Part 2 was the double jeopardy clause, and that Part 3 did not garner five votes, which was the issue preclusion issue. Well, I think it's important to recognize that issue preclusion is a component of the double jeopardy clause. Part 3 had to do with how does that issue preclusion component of the double jeopardy clause apply. Does it bar prosecution altogether? Does it only apply to the presentation of evidence on an issue? And that there wasn't a majority on. But if we look at Justice Kennedy's concurrence with Part 2, he says the reason we don't need to deal with Part 3 at all is because effectively the waiver of a severance means that there isn't any application of any kind of issue preclusion at the second trial. Whether we're talking about barring prosecution altogether, whether we're talking about only limiting the sort of evidence that can be presented at the second prosecution, it doesn't matter. The issue preclusion component of the double jeopardy clause simply doesn't apply, and so that's why Justice Kennedy didn't join Part 3 and why the majority opinion is simply Part 2. Counsel, isn't this case a little different? Because Section 3-4b2, there's no Federal statute very much like this, and Courier didn't consider specifically issue inclusion when it was considering the issues in that Courier case? That's true, Your Honor. We do have the statute, but this Court has recognized that Illinois' double jeopardy statute effectively codifies the double jeopardy clause. There's one exception, that's Section 3-4c, where the General Assembly decided they were going to add different and greater protections than provided under our Federal double jeopardy clause, where they said those clauses allow for a defendant to be successfully prosecuted for a crime after there had been a final judgment in another jurisdiction, State or Federal. Haven't you essentially nullified Section 3-4b2 with your interpretation of Courier? It's as though it doesn't exist. No, Your Honor. It still codifies the constitutional provision. It's just the constitutional provision does not, when a defendant asks for two trials, bar the second trial that he asks for. But there's nothing in Section 3-4b2 that says if he asks for a trial, then he's barred from invoking this particular provision. That is certainly true. I would note that I'm not familiar with very many statutes or common law doctrines at all that explicitly say, and this is subject to the usual rule of invited error or waiver, we normally presume that when a defendant asks to proceed in a particular way, they are waiving any objection to proceeding in the way that they asked to proceed. So I think it is telling that the General Assembly did not create a carve-out for the Adult Jeopardy statute saying it's not subject to the usual rules of waiver and invited error. Tell me how I interpret this language in Courier. It says the proper authorities, the States and Congress, are empowered to adopt new laws or rules experimenting with issue or claim preclusion in criminal cases if they wish. What's the meaning of that? That's in Section 3. Yes, absolutely. And I think that Section 3-4c of the Double Jeopardy statute is a good example of this. We have the Double Jeopardy clause that provides particular rights. We have a statute that codified that clause. This Court had already held that the Double Jeopardy statute just codified the Double Jeopardy protections. And then the General Assembly decided they wanted to add a different protection, a protection beyond the Double Jeopardy clause, a protection against, again, successive prosecution for an offense that reached a final judgment in another jurisdiction, State or Federal. It was this Court recognized that our Double Jeopardy clause, like the Federal Double Jeopardy clause, does not prohibit that prosecution under the sovereign statute. But the Court said that the General Assembly, representing the people of the State, had added this additional protection in this subsection. And so that indicated that there was now additional statutory protection. The other provisions don't provide different or further protections. And again, I think it's significant that they don't say that a request to be tried twice is exempt from the usual rules this Court applies for invited error or waiver. It would be very odd for the General Assembly to have included that carve-out, sort of sub silencio where they don't for any other statute, really. Why is this invited error? I don't understand that. I mean, it's not as though a defendant is saying that you've erred by granting my request to sever the trial. What he's saying is these are the consequences of a not guilty law. That's why I've been using the phrase waiver or invited error, because you're absolutely correct. The term invited error – So is there some type of hybrid waiver slash invited error under our law? No, Your Honor. The problem with the – the Court's also used the phrase acquiescence for invited error. Really, the problem is not that there's an error. The problem is that the defendant is asked to proceed in a particular manner. And so when we talk about invited error, we mean that he can't later allege that the process that he asked for, that he invited, was error, whether it was or not. So maybe the invited alleged error would be sort of a more accurate articulation of the doctrine. But ultimately, it boils down to a defendant may not ask to proceed in a particular way and then complain that they proceeded in the way that he asked on the grounds that what he asked for was error. Whether it was or wasn't error is ultimately beside the point, which is why when this Court addresses claims that are raised but barred by – But there's no error here. There is no error. There's no explaining there's error here. There is no error. And that's why the Court, when someone raises a claim of error and says, yes, I know, I said no objection, or I said please do this below, but it was error, the Court doesn't even address whether it was error. They say you asked for it, and so we're not going to address whether it was error. It's not even subject to plain error analysis when it is waived in that manner. So I agree there isn't actually an error here. The doctrine is commonly called the invited error doctrine, but we could call it the waiver doctrine. The acquiescence doctrine all amounts to the same thing, which is that if you act to proceed in this way, you can't complain that you got what you asked for. So issue preclusion is an equitable doctrine. Why is this so unfair to the State that they not get a second opportunity to convict him of possessing this gun? Sure. So the reason it's unfair to the State is, again, that at the time the defendant asked for this severance, everyone would have understood that this meant that there would then be two trials. If the State had known, we're not going to get a chance to try this other one, depending on the verdict of the first one the State might have objected. I do think it's worth noting what a severance actually does, because I think this Court's explanation in People v. Jones in 2003 about the inconsistent verdict rule not applying is significant here. There's absolutely no question that a defendant cannot use inconsistent verdicts in a trial to weaponize an acquittal on one count against a guilty verdict on another. And that's because, as the Court explained, it's all one prosecution, and we're not going to interrogate as to why the jury may have returned inconsistent verdicts. What a severance does is not get you sequential trials. It gets you separate proceedings. It takes a single prosecution, right? There's one indictment. It takes a single prosecution, and it splits that prosecution, it splits really the evidence in that prosecution into two, right? We're going to have one fact-finder consider the evidence on these counts, and one factor-considerer on these counts. But that can happen at the same time. We could rather have imagined rather than the Court granting a motion to sever and ordering sequential sever trials, the Court could have granted a motion to sever and ordered simultaneous sever trials. This happens most frequently, I think, when there's a severance between a defendant and an acquittal in those trials. You've got two juries. They're in the courtroom. One of them is hearing the evidence as to these counts. One of them is hearing the evidence as to those counts. When the evidence only as to these counts come in, this jury leaves. They come back. The trial concludes. Then they go off to their separate deliberation rooms to consider the evidence on the counts that they're charged with considering. They then come back and return their verdicts. It would be absurd in that circumstance, simultaneous sever trials, to say that whichever jury announces its verdict first controls. So it would essentially become a race to the jury room and back. Whichever jury comes back, the first jury that comes back and announces its verdict, announces an acquittal, then we tell the other jury, stop deliberating. There's now an issue preclusion problem. You can't even consider the count that was before you. Really, it could be a photo finish. Both of them come back at the same time. The court has to ask one of the juries to announce their verdict first. And if the one it asks to announce first says, we find the defendant not guilty, then the other jury that considered the simultaneous severed count would not be allowed to announce its verdict because it's now irrelevant. There's an issue preclusion problem. And that's the situation you're describing where you have two separate defendants. In this instance, it's the same act, the same individual. Why is it that the State is not bound by the decision made by this jury? Whether or not, I mean, let's say if they, if what you're arguing is true, then we get to the second trial. Should they just not be precluded from presenting this evidence that they have to go forward without being able to decide this issue? No, Your Honor. I think there's two questions in there. The first one is, well, but there it's different defendants, and so doesn't that operate differently? But it doesn't have to be different defendants. It can be simultaneous severed trials of different counts. Typically, there's a difference. In what you're describing, you were saying we usually see this when there are co-defendants. But there's no requirements that it be limited to that circumstance. I think probably pragmatically, it's probably as a logistical matter, people prefer to do it as sequential trials. But it's not like a court couldn't say, you're asking for a severance of these counts. Great, I have this trial date. We'll convene two juries and we'll go. We have simultaneous severed bench trials all the time, similarly. So if you had one defendant, this defendant, says, I want to sever the unlawful possession of a weapon by a felon count from these other counts. I don't want this evidence to be considered by a fact finder who expects these other counts. Fine. The court could say, all right, we'll convene two juries. When the evidence of the felony comes in, this jury will leave and they'll come back. There is no problem if those juries return inconsistent verdicts in that single prosecution. In the same way, there's no problem if a single jury returns inconsistent verdicts. Absolutely. Your examples are confusing me. In just a very basic way, if the state fails to convince a jury that a fact exists, why should the state get a second chance to convince a second jury that that fact exists? And the answer is that they wouldn't unless the defendant asks to be tried twice, in which case he has expressly waived any objection to being tried on that element again. Where does the statute say that? What are you relying on for that? Sure. So first, under the Double Jeopardy Clause, I'm relying on Currier, because Currier in Part 2 says that when a defendant invites a second trial, they cannot argue issue preclusion against that trial. Under this Court's Constitution, which we've seen in lockstep, the same is true. Under the Common Law Doctrine of Issue Preclusion, the defendant argues that that applies differently or somehow separately from the Issue Preclusion Doctrine when it's incorporated into the Double Jeopardy Clause. But there are two problems with that. The first is that it's just limiting evidence and not barring prosecution. And the appellate court had no jurisdiction over its appeal because the defendant has no appellate right from an interlocutory order denying what is effectively a motion to eliminate, to limit the evidence of the second trial. The second problem is that it is an equitable doctrine, to be sure, but we have this contraveiling equitable doctrine of waiver. When a defendant asks for the court to proceed in a particular way, he can't complain when he gets what he asked for. And that's exactly what happened here. He asked to have two trials at which this element would be tried in both. He cannot then complain that he's getting exactly what he asked for when the only reason that it proceeded in this manner is because he asked the court to proceed in this manner. This could have all been in a single prosecution had he not asked for that procedure. So to allow it. Counsel, with Currier, we're talking about the federal law as far as, and then our application of the same constitutional right, double jeopardy, and we're asking basically, we're basically going to apply the same thing to the state if we're going to be in lockstep. But what about the common law issue preclusion, and specifically how does the Heron case impact that? Isn't that something different that we don't have to consider, Currier? So Heron doesn't answer the question for two reasons. First, again, if Heron, if we just follow Heron, Heron says we can limit the evidence. We're not going to litigate this fact, but you can still have the prosecution. In that case, again, there's no jurisdiction over it. I know it's my time, so I'm going to conclude my answer. Please proceed. There would be no jurisdiction over that appeal if the complaint is just my motion will be made to exclude this evidence from the second trial. It was improperly denied. There's no right to appeal that order, and so there would be no jurisdiction. The appellant court should dismiss it on that basis. Only the state has the right to appeal from an adverse ruling on motion limiting evidence. The second problem is that Heron is really a precedential cul-de-sac in this court's body of precedence on the doctrine of issue preclusion in the criminal context. Prior to Heron, in cases like Kidd and Fox-Nagle, the court uniformly held that we look at whether something is an ultimate fact in both of the two prosecutions, and that's the only thing we care about. That's how the Supreme Court does it in Ashby-Clemson and Dowling. And then after Heron, the court returned to that same articulation of the doctrine of issue preclusion in the criminal context, frequently citing Ash. And so Heron is really a one-off that has confused the matter in a couple of instances now in the criminal context, so we would argue that Heron, again, is a precedential cul-de-sac that this court should close off. Thank you. Thank you.  Mr. Wallace. Good morning, Your Honors. Counsel, and may it please the Court, my name is Zachary Wallace. I'm from the Office of the State Appellate Defender, and I'm here on behalf of the appellee, Terry Collins. Your Honors, the issue in this case is actually quite narrow. While Currier interpreted the federal double jeopardy clause, Currier does not have an impact on the common law doctrine of issue preclusion that has existed in Illinois for over a century, and that this case in Heron applied to criminal cases in 1963. Currier's impact is largely limited to the Illinois state constitutional double jeopardy clause, and for that reason, that's why the state's arguments as to why issue preclusion should not apply in this case is largely an argument of invited error or waiver. However, Your Honors, this is not an invited error case. The only action that Mr. Collins took in this case is to move to sever charges. Severance is a perfectly acceptable procedure, allowed to help reduce the prejudice that results from the introduction of a prior conviction or a defendant's felon status, and Mr. Collins has never challenged the grant of that motion, nor has he raised any claim challenging that ruling. What Mr. Collins asks in this case is that the state should not be allowed multiple opportunities to relitigate an issue that a jury already has rejected or resolved in Mr. Collins' favor. The state argues that by severing, Mr. Collins has waived not only his double jeopardy protections, the state argues he's necessarily waived issue preclusion protections, and he's essentially waived any right to prevent the state from relitigating an issue that the state already had a full and fair opportunity to litigate and was rejected by a jury. Do you agree that your client has waived it as it relates to double jeopardy? Well, Your Honor. Under Currier. Under Currier. Lockstep. Yes, if this court proceeds with lockstep, or continues right here to lockstep, the Illinois state constitution's double jeopardy clause would be interpreted the same way that Currier is. Currier holds that when a defendant moves for severance, he consents to separate trials and thereby waives all double jeopardy protections, including to the extent as an issue preclusion component, that would be waived as well. However, the holding in Currier is limited to that constitutional, the state constitution, and for good reason, because while severance may be consent to separate trials, it certainly is not consent to the manner in which a second trial could proceed. It's important to note that the state argues that what Mr. Collins essentially is doing is saying, I asked for two trials and now I'm acquitted. Don't try me again in any circumstance. But what Mr. Collins is actually doing is a little different. Mr. Collins asked for separate trials. The first trial is conducted. The jury acquits him. But in acquitting him, the only issue the jury had to decide is whether he possessed a firearm. So in this case, it's clear what the jury necessarily decided in rendering their acquittal. The issue preclusion doctrine applied to criminal cases holds that when that situation is settled, when it is clear that a jury has considered an ultimate fact and based its acquittal on that ultimate fact, the state may not then relitigate that same fact in front of a second jury. So this is not a situation where Mr. Collins is essentially arguing semantics here. Mr. Collins isn't arguing that in every situation where I move for severance or where he moves for severance, that if acquitted, the state would never be allowed to do a second trial. Mr. Collins is arguing that in this case, the issue preclusion doctrine, as defined in Hoffman, as defined in Horan, as defined in cases even post-Ash, directly applies, as defined in the statute, applies and bars the prosecution of the aggravated unlawful use of a weapon charge, where the only issue in dispute in that case would be whether he possessed a firearm, which a jury has already rejected. Mr. Wallace, if hypothetically, if there were actually two facts at issue here instead of simply the one fact of possession and you got a not guilty, you wouldn't be able to argue issue preclusion because you wouldn't know which fact the jury relied on, correct? Your Honor, that is correct. If, let's say this was, hypothetically, let's say it was armed violence, perhaps, where the state would have to require both that he committed a felony and possessed a weapon while committing the felony. If the jury, if the state at closing argues that both elements are in dispute, there is a dispute as to both elements, the jury returns a general jury verdict, and it cannot be said for certain that the jury did necessarily decide either issue of rendering the acquittal, then issue of preclusion would not apply. What I'm getting at is looking at the appellate court's decision at paragraph 30, where they discussed the Justice Gorsuch's plurality opinion. At the end of that paragraph, the court says that Justice Gorsuch's opinion acknowledged, quote, that in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense. Explain that to me. Yes, Your Honor. So what that portion is essentially saying is that, I believe this case actually illustrates that scenario. Here you do have separate offenses. You have unlawful possession of a weapon by a felon, aggravated unlawful use of a weapon. Separate offenses. However, at the first trial, both parties stipulate to the defendant's felon status, the only issue in dispute is whether he possessed a firearm. So the issue at that trial, the sole issue in that trial is whether he possessed this firearm. So if the state then were to say after the acquittal, we're going to proceed on aggravated unlawful use of a weapon at this trial. It's based on the same scenario. The vehicle's pulled over. There's a firearm discovered. The issue in dispute, the element there in that case would be, did Mr. Collins carry this firearm? So by relitigating the issue of Mr. Collins' gun possession, it's tantamount to a retrial from the first offense because the state is essentially trying to convince a second jury of a fact that the first jury has already rejected. So even though yes, in title, it's different offenses, it's essentially the same evidence. It would be the same element in dispute. It would be carry opposed to possess, but possess kind of encompasses carrying. So it would be tantamount to a retrial. And what's important, Your Honor, about Currier is that while yes, Part 2 in Currier has a majority, Part 3, Currier is discussing the application of issue preclusion, the doctrine of issue preclusion or issue preclusion principles to criminal cases generally. So to the extent that a plurality of justices in Currier calls into question whether issue preclusion should apply in criminal cases, the Currier opinion has no discussion or no holding of whether or not issue preclusion can apply. And in fact, issue preclusion applied to criminal cases far before it was even constitutionalized. In Ashe, at the time of Ashe, the federal rule of issue preclusion had applied to criminal cases. U.S. versus Oppenheimer. Oppenheimer, Stelfon. There were several cases that applied issue preclusion to criminal cases. What Ashe did is he constitutionalized it. So it's a constitutional floor essentially saying, well, as a part of the double jeopardy protection, we believe there's an issue preclusion component to the extent that you can't, if the relitigation of an issue is paramount to a second trial, it's essentially a component of double jeopardy. So Ashe constitutionalizes this. But nothing about Ashe overturns or calls into question the application of the doctrine of criminal cases as this court did in Horan. And the state attempts to kind of cast Horan as this outlier case. However, it's important to note that Horan found without doubt the doctrine of issue preclusion applies to criminal cases. Horan then cites the Hoffman versus Hoffman where the doctrine is articulated and posts Horan and posts Ashe in cases such as People v. Ward, People v. Williams. This court has recognized that in Horan we found issue preclusion applies. Additionally, the United States Supreme Court in Ashe found that issue preclusion is a component of the federal double jeopardy clause and then proceeds to cite the test laid out in Horan, first articulated in Hoffman, for how the issue preclusion doctrine operates. So Horan is certainly not an outlier and there's certainly nothing invalidating Horan or no decision of this court overturning Horan. And, Your Honors, the state argues that at the time Mr. Collins moved for severance, it was clear that Mr. Collins was then waiving all double jeopardy protections, all issue preclusion protections. However, it wasn't clear where there was no case or no law in Illinois saying that the issue preclusion component of the statutory right does not apply to defendants severed. There was no case that said Horan was wrongly decided, that issue preclusion doesn't apply to criminal cases. There was no case that said if you move to sever, you are necessarily allowing the state to not only proceed with a second trial, you're allowing the state to relitigate an issue that's necessarily been decided. Nor should there be a case. To apply the state's argument and to say that severance means a defendant has waived not only his double jeopardy protections, he's waived the issue preclusive effect of an acquittal, it has serious consequences. First, it would be difficult to justify that in a civil case, parties cannot relitigate an issue that a court has already decided. Yet in criminal cases where a defendant's liberty is at stake, the state can relitigate an issue multiple times if the defendant opted to sever without objection from the state in order to attempt to secure his right to a fair trial. There's no reason for civil verdicts to be afforded more finality than a criminal verdict, particularly when the stakes in criminal verdicts are much higher. And on the constitutional issue, you're asking this court to deviate from the limited lockstep. Correct, Your Honor. On the constitutional issue, Mr. Conlin's argument is that this court should deviate from lockstep in this case and interpret our state constitution's double jeopardy clause as providing broader protections than the federal counterpart. Your Honor, importantly, limited lockstep is not a constitutional command. There's nothing in the 1970 state constitution mandating that this court interpret parallel provisions identical to how the United States Supreme Court interprets federal constitutional provisions. Rather, lockstep is a judicial doctrine or judicial restraint. And, Your Honor, in this case, there's good reason to depart from lockstep and find that the double jeopardy clause of our state constitution protects defendants in Mr. Conlin's case. As an initial matter, the right to bar the state from relitigating issues that have already been decided existed prior to the drafting of the 1970 state constitution. As I said before, that doctrine has existed for over a century. In Iran, in 1963, this court applied it to criminal cases. So at the time of the drafting of the constitution, there was a longstanding tradition of affording defendants this right. And, importantly, at the time that our 1970 constitution was drafted, the United States Supreme Court had already incorporated many of the federal Bill of Rights to the states. So when the framers of our modern constitution drafted our constitution, it would be little reason to include the parallel provisions of our state constitution with the federal counterpart if their intention was for those provisions to never be interpreted more broadly than the federal counterpart. Because when the United States Supreme Court issues a decision expanding a right, that's always going to apply to the state constitution. The state constitution cannot be more narrow than the federal constitution. The only time that lockstep really comes into play, Your Honors, is when the United States Supreme Court diminishes the rights of the citizens, when the Supreme Court expands governmental power. For instance, in this case, the United States Supreme Court says, if the defendant moves to sever, he waives all double jeopardy protections, thereby substantially diminishing the defendant's right to double jeopardy and expanding governmental authority where such a holding puts the state in a very advantageous position. Essentially, the state is in a position, when the defendant opts to sever, where now the state can decide to charge the weaker charge first. They can charge a lesser charge first and use the first trial as a dry run to learn the weaknesses and strengths of their own case, learn the defense's case. If convicted, the defendant certainly loses all leverage for a guilty plea at a subsequent trial. He's exposed to his impeachment. And more importantly, the purpose of double jeopardy is the notion that defendants should not be subjected to the embarrassment, the expense, the insecurity and anxiety that comes with a criminal prosecution repeatedly when they've already been acquitted of the offense. Counsel, do we have to depart from limited lockstep for your client to maintain the relief that he's obtained? I mean, couldn't we certainly just say common law issue preclusion means that they can't try this issue again and we're all done? Absolutely, Your Honor. This court absolutely does not have to depart from limited lockstep. It's an argument that's raised. However, this court would only need to reach that argument if this court were to discern and determine that issue preclusion common law statutory does not apply and also rejects the argument that courier is distinguishable on its facts. So, Your Honors, ultimately, contrary to the state's position, this case is actually quite narrow. Mr. Collins, we move to separate, which is a perfectly acceptable procedure. To the extent he necessarily consented to separate trials, he did not consent to the state relitigating an issue that's already determined. This court has applied common law issue preclusion to criminal cases even predating Ash. Our double jeopardy statute provides explicitly for issue preclusion and courier is not dispositive or has any impact on either of those bases of relief. Furthermore, if this court were to determine that issue preclusion only operates as part of the double jeopardy clause and also determines that courier is dispositive of the issue we're controlling, Mr. Collins would still prevail because courier is distinguishable on its facts and because this court should depart from limited lockstep and find that our state constitution provides broader jeopardy protections in this case. Your Honors, the appellate court correctly decided that after the state had a full and fair opportunity to litigate the question of whether Mr. Collins possessed a firearm, the state could not, therefore, proceed with a second trial to relitigate that same issue. If there are no further questions, we would just ask that this court affirm the judgment of the appellate court Thank you. Thank you, Mr. Wallace. Some brief rebuttal? Thank you, Your Honor. I will try to be brief. I think I've got two points I'd like to focus this rebuttal on. The first is, again, there's no question that issue preclusion applies in criminal cases. The defendant has gone on very persuasively to argue that that is the law in Illinois, and we agree issue preclusion does apply in criminal cases. It applies under Ashby-Swenson. It applies under Herron. The question is, what is the effect of asking to be tried twice on a particular issue? What is the effect of that waiver? The defendant's argument is that it has no effect at all. If he was charged in one indictment with UPWF, that charge went to trial. He was acquitted. And then the state charged him with these other offenses. He says the analysis is exactly the same in that circumstance as in this circumstance. We ignore the fact that there is this waiver. We simply apply the double jeopardies issue preclusion analysis as though nothing had happened. And respectfully, that is not correct. That ignores the significance of a defendant's strategic decisions in how to litigate his case. When a defendant asks to proceed to two trials, he cannot then complain that he got the two trials. He knows. How do you respond to counsel's argument that if we were to adopt your rationale that we would essentially be saying that you have less rights in this realm than if it was a civil trial where you could have to try differently and issue preclusion would apply in a civil context? And the answer is that that is incorrect because that, again, ignores the you have the same right to issue preclusion when you don't waive it. But imagine if we had civil litigants and in a civil trial the litigant, the defendant asks to proceed on the issue of liability first and then we'll proceed to the issue of damages or whatever. You can tell I don't do a lot of civil litigation. If the defendant had explicitly waived the issue of preclusion, he said, look, this is not going to bar a subsequent proceeding. There's another plaintiff, or actually the defendant. The defendant says, look, I want to proceed in this manner. There are too many plaintiffs in this case. Let me split this up. And I agree that a judgment in my favor in this case will not have preclusive effect on this other proceeding being brought in this other case number. It's not clear to me why we wouldn't give that waiver any meaning at all. And that is effectively what's being asked to do here. Defendants have the same right here to issue preclusion as a civil litigant. But it's not clear why the waivers don't have any effect in criminal proceedings when we typically give waivers effect. Again, that's what the doctrine of invited error or apogesis or waiver, that's what it's for. It's when a defendant has made a strategic decision to proceed in a particular way, knowing that when he does so it will result in this consequence, he can't then complain that that consequence comes to pass. So I just want to be very clear. This is not a question about whether issue preclusion applies in criminal cases. Everyone agrees that it does. This is a case that presents the question of what is the effect of asking to be tried twice on your ability to then argue issue preclusion to bar the second trial. The second point I want to bring up is the question of lockstep. I think it was articulated as a question of judicial restraint rather than sort of a canon of construction, and that's incorrect. This court explained in Kampalas, the reason that the court applies the limited lockstep doctrine is not because the court is in any way reticent about construing our Constitution independently from the United States Supreme Court's construction of the cognate federal provisions. The reason that this court applies limited lockstep is because that is what was intended by the framers when they drafted the 1970 Constitution and was intended by the voters when they adopted that Constitution because that was the state of play at that time. The court had construed the provisions of the 1870 Constitution in lockstep with the federal cognate provisions, and that was how everyone understood that these provisions would be construed as well unless there are two circumstances. One was that the text of the new provision departed from the text of the federal cognate provision in some material way, indicating an intent to apply different or greater protections. The second is that the new provision, although textually indistinguishable from the federal provision, nonetheless was enacted against a common law backdrop providing different or greater provisions, in which case we have a long-standing Illinois tradition warranting departure from lockstep. But Tennant has not argued that either of those is the case here. He has argued that the courts should depart from lockstep when it disagrees with the United States Supreme Court's construction of the cognate provision. In other words, ignore the intent of the framers and the voters that the court apply lockstep doctrine and strike out on the court's own. The court expressly declined to do so in Caballas, and the court recognized that it is the right of the people of Illinois to provide different or greater protections than those they provided in the Constitution, as they tend to be interpreted. They can do that by amending the Constitution. They can also do that by enacting statutes. As we noted, Section 3-4C of the Double Jeopardy Statute reflects exactly that kind of legislative effort to provide a greater or different protection than the Constitution provides. So this case provides no basis to depart from lockstep. For those reasons and the reasons in our briefs, we ask that the court reverse the judgment of the appellate court and remand for trial on the severed count. I would also briefly note, just as a matter of docket housekeeping, the court currently has pending before it the companion PLA in case number 131298. The trial court had moved to sever two counts. And then after the trial on UPWF, he had moved to bar prosecution on those severed counts. The court had granted the motion as to one, denied it as to the other. Both parties appealed, and the appellate working group was in favor in both. So we would ask that when the court was in this case, that it enter an appropriate ruling in that case as well. Thank you very much. Thank you. Case number 131300, People v. Collins, is taken under advisement as agenda number two. We thank Mr. Schneider and Mr. Wallace for their arguments.